IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN AYANBADEJO and | § | |
| FELICIA MALVEAUX AYANBADEJO, | § | |
| Petitioners, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-1177 |
| | § | |
| MICHAEL CHERTOFF, *et al.*, | § | |
| Respondents, | § | |

## MEMORANDUM AND ORDER

The plaintiffs, John Ayanbadejo and Felicia Malveaux Ayanbadejo, filed this action against Michael Chertoff in his official capacity as Secretary of the United States Department of Homeland Security and District Director Sharon A. Hudson of the United States Citizenship and Immigration Services ("USCIS").[1] The plaintiffs seek declaratory, injunctive, and mandamus relief from an adverse decision by immigration officials. The defendants have filed a motion to dismiss (Doc. # 11). The plaintiffs have filed a response under seal (Doc. #16), along with several other motions. The defendants have filed a reply (Doc. # 17), to which the plaintiffs have filed a supplemental response (Doc. # 19). After considering all of the pleadings, and the applicable law, the Court grants the defendant's motion and dismisses this case for reasons that follow.

---

[1] The defendants note that the complaint incorrectly names Evelyn Upchurch of the USCIS Texas Service Center. (Doc. #11, *Motion to Dismiss*). At the defendants' request, the Court substitutes Sharon A. Hudson as the proper defendant.

**I.     BACKGROUND**

The plaintiffs in this case seek judicial review of the denial of an immigrant visa petition for the spouse of a United States Citizen and the subsequent decision to deny an adjustment of immigration status.  The plaintiffs are John Ayanbadejo ("John") and Felicia Malveaux ("Felicia").[2]  John is a native and citizen of Nigeria, who arrived in the United States on a tourist visa (*i.e.*, on a non-immigrant visitor visa) on December 18, 1996.[3]  Shortly thereafter, John met Felicia, who is a United States Citizen and a resident of Beaumont, Texas.  The two married on February 10, 1997.

When a United States Citizen marries an alien, the citizen can file a Form I-130 "Petition for Alien Relative" (an "I-130 Petition") to have the spouse classified as an "immediate relative."  *See* 8 U.S.C. §§ 1154 (establishing the petitioning procedure for an immigrant visa based on "immediate relative" status) and 1151(b)(2)(A)(i) (defining "immediate relative" to include a citizen's spouse).  Once classified as an immediate relative of a United States Citizen, the alien spouse becomes eligible to seek an adjustment of his immigration status by filing a Form I-485 "Application to Register Permanent Residence or Adjust Status" (an "I-485 Application") and to become a lawful permanent resident under 8 U.S.C. § 1255(a).

---

[2]  The complaint identifies Felicia as "Felicia Malveaux Ayanbadejo," but exhibits provided by the plaintiffs reflect that Felicia continued to use her maiden name after the marriage, signing tax returns and other documents, including the visa petition and an affidavit to immigration officials, as "Felicia Malveaux."  (*See* Doc. #16, Ex. 4, 5, 9).

[3]  John Ayanbadejo's authorization to remain in the United States expired on June 16, 1997. (Doc. #16, Ex. 2, *INS I-94 Departure Record*).

2

On March 3, 1997, less than a month after their marriage, Felicia filed an I-130 Petition seeking to establish that, as her spouse, John qualified as her immediate relative for the purpose of obtaining an immigrant visa. Around that same time, John filed an I-485 Application on his own behalf to adjust his status from that of a non-immigrant tourist to that of an immigrant with lawful permanent resident status.

Both of the initial submissions filed by John and Felicia were unsuccessful. After conducting the requisite inquiry, immigration officials issued a notice of intent to deny the I-130 Petition because the investigation raised doubts about the validity of John and Felicia's marriage. (Doc. #16, Ex. 8, *Notice of Intent to Deny*). Based on that investigation, officials concluded that John and Felicia did not have a bona fide marriage for purposes of eligibility for the immediate relative immigrant visa. (*See id*.). Thereafter, immigration officials issued a notice of intent to deny John's I-485 Application.

On April 17, 2001, Felicia filed a second I-130 Petition seeking an immediate relative immigrant visa for John. John also filed a second I-485 Application in an effort to adjust his status to become a lawful permanent resident alien. On June 26, 2002, the USCIS issued a notice of intent to deny Felicia's second I-130 Petition on the grounds that her union with John did not qualify as a bona fide marriage for purposes of establishing eligibility for the immediate relative visa:

> Service records reveal [that] you and your [husband] appeared for an interview on January 08, 2002. At that time you stated that on December 16, 1999 you appeared for an interview regarding your initial filing. At that interview you were requested to submit additional documentation in order to establish eligibility for the benefit sought. The Service received your documentation and determined that it was insufficient. On December 5, 2000 the Service

3

> issued a notice of intent to deny the visa petition. Although you submitted additional documentation in response to that notice, on April 17, 2001, you filed another Form I-130. At your second interview you acknowledged that you have been living in Beaumont, Texas but your spouse [John] has been living in New Jersey since October 2001. He previously resided in New York City from October 2000 until October 2001. During that time, you remained in Beaumont. You have not visited your husband in New York or New Jersey. Your spouse stated that he visits Houston and submitted evidence of flights to and from Houston. No evidence was presented showing who he visited and where he stayed on those visits to Houston. You have previously stated, in writing, that your spouse has a brother and other family members who live in Houston. Additional evidence is not supportive of a viable marriage. For example, the monthly statement from your joint checking account at United Bank showed no activity for the month. The cancelled checks you submitted were written to you and signed by you. The evidence submitted fails to establish eligibility for the benefit sought.

(Doc. #11, Ex. 1, *Notice of Intent to Deny*). Based on these findings, the Acting District Director gave notice of his intent to deny the I-130 because he had "reason to believe" that the marriage was not viable, that it was entered into solely "for immigration purposes," and that a visa was precluded due to a "fraudulent marriage." (*Id.*). As outlined in the Notice of Intent, Felicia was afforded an opportunity to show why the petition should not be denied. (*Id.*).

Felicia filed a response to the Notice of Intent and she presented additional documentation. On October 9, 2002, the USCIS found that the documentation presented was insufficient to establish a bona fide marriage or eligibility for the requested immediate relative visa:

> At the time of interview, you acknowledged that you reside in Beaumont, Texas and that your husband has been living in the New York/New Jersey area since October 2000. You acknowledged that you have never visited your husband in New York, or New Jersey since he moved there almost two years ago. Although your husband has made trips to Houston, you have failed to

4

>provide evidence of any contact with your husband during those visits. You stated that your husband's family lives in Houston and that he frequently stayed there (not with you in Beaumont) prior to his move out of state. You provided no evidence of telephonic communication with your spouse, such as long distance telephone bills. Your "letters" to your spouse consisted of one three-sentence note stating that you were forwarding income tax papers to his New York address. That letter was postmarked AFTER the interview. The evidence you have submitted fails to establish eligibility for the benefit sought. You have provided insufficient evidence that a bona fide husband-wife relationship was intended.

(Doc. #11, Ex. 2, *Notice of Denial*, dated Oct. 9, 2002) (emphasis in original). Therefore, the District Director denied the I-130 Petition based on the finding that the marriage was entered into "for the purposes of circumventing immigration law." (*Id.*). The USCIS also denied John's I-485 Application to adjust status. (Doc. #11, Ex. 3, *Notice of Denial of Application for Permanent Residence*, dated Oct. 9, 2002).

The plaintiffs filed an appeal from the decision to deny the I-130 Petition filed by Felicia on John's behalf. On June 16, 2005, the Board of Immigration Appeals affirmed the decision without a written opinion. (Doc. #11, Ex. 4, *Decision*). John Ayanbadejo appealed the BIA's decision by filing a petition for review with the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit dismissed the petition for lack of jurisdiction. *See Ayanbadejo v. Gonzales*, No. 05-60674 (5th Cir. Nov. 9, 2005).

John and Felicia now seek a declaratory judgment under 28 U.S.C. §§ 2201, 2202, and mandamus relief from the decision denying John an immediate relative visa and adjustment of status. In particular, the plaintiffs ask this Court to consider the submissions filed on behalf of John Ayanbadejo and do the following: (1) require the defendants to submit records of the underlying administrative proceeding in compliance with a request

5

made under the Freedom of Information Act on November 29, 2005; (2) vacate the defendants' decision that John Ayanbadejo is not eligible to adjust his status because the plaintiffs' marriage is a "sham"; (3) conduct a *de novo* review of the application for adjustment of status filed on behalf of John Ayanbadejo and declare that he is eligible for an adjustment of status and naturalization; or (4) remand the applications for adjustment of status for consideration by the defendants under "the correct constitutional standards." (Doc. #1, *Complaint*, at 13).

The defendants have filed a motion to dismiss for lack of subject matter jurisdiction. In response, the plaintiffs insist that they are entitled to prevail in this matter. The plaintiffs have also filed various motions, including one for leave to amend a portion of their complaint, among other things. The parties' contentions are discussed below under the governing legal standards, starting with the defendants' motion to dismiss. The plaintiffs motions are addressed further below.

**II.    DEFENDANTS' MOTION TO DISMISS**

The defendants have filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citations omitted). In considering a challenge to subject matter jurisdiction, the district court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Id.*

6

In this instance, the plaintiffs necessarily seek review of the denial of the I-485 Application for adjustment of status filed by John and the I-130 Petition filed by Felicia on John's behalf as her immediate relative. Each adverse decision is reviewed separately below to determine if subject matter jurisdiction is lacking.

### A. The I-485 Application for Adjustment of Status

The defendants maintain that the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231 (May 11, 2005), precludes this Court's review of the decision to deny John Ayanbadejo an adjustment of status. The REAL ID Act has amended the immigration statutes governing judicial review, codified at 8 U.S.C. § 1252(a), by adding the following jurisdictional restriction on judicial review of denials of discretionary relief or any other discretionary decision by immigration officials acting under the Attorney General's authority:

> (2) Matters not subject to judicial review.
>
> (B) Denials of discretionary relief
>
> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, **no court shall have jurisdiction to review** —
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or **1255** of this title, or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for

>which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief [in asylum cases] under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B) (emphasis added). The plaintiffs complain that this statute, as amended by the REAL ID Act, does not apply because there has been no order of removal entered in this case. The statute, as amended by the REAL ID Act, however, plainly applies "regardless of whether the judgment, decision, or action is made in removal proceedings." 8 U.S.C. § 1252(a)(2)(B). This means that, since the enactment of the REAL ID Act, the jurisdiction-stripping provision found in § 1252(a)(2)(B) applies outside the context of removal proceedings. *See Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 200 n.5 (3rd Cir. 2006).

The adjustment of status of the type sought by John Ayanbadejo in his I-485 Application is governed by 8 U.S.C. § 1255. Under this statute, the status of an alien "may be adjusted by the Attorney General, *in his discretion* and under such regulations as he may prescribe," provided that "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a) (emphasis added). Thus, the statute plainly provides that adjustments of status under § 1255 are discretionary.

Discretionary denials of applications for adjustment of status under 8 U.S.C. § 1255 are expressly included within the jurisdiction-stripping provision found in § 1252(a)(2)(B)(i). The Fifth Circuit, along with several other circuit courts of appeal to address this issue, has

recognized that review of discretionary denials of applications for adjustment of status is plainly precluded by § 1252(a)(2)(B)(i). *See Hadwani v. Gonzales*, 445 F.3d 798, 800 (5th Cir. 2006) (citing *Zheng Zheng v. Gonzales*, 422 F.3d 98, 111 (3d Cir.2005) ("[Section 1252(a)(2)(B)(i)] plainly forecloses review of the Attorney General's exercise of discretion in granting adjustment of status in individual cases"); *Ekasinta v. Gonzales*, 415 F.3d 1188, 1191 (10th Cir. 2005); *Succar v. Ashcroft*, 394 F.3d 8, 19 n.15 (1st Cir. 2005); *Pilica v. Ashcroft*, 388 F.3d 941, 945 (6th Cir. 2004); *Boykov v. Ashcroft*, 383 F.3d 526, 531 (7th Cir. 2004)).

Because the governing statute plainly states that decisions of the sort made on the I-485 Application filed by John Ayanbadejo are discretionary, this Court has no jurisdiction to review the adverse decision regarding John Ayanbadejo's I-485 Application for adjustment of status. *See Hadwani*, 445 F.3d at 800. The defendants' motion to dismiss on this issue is granted.

### B. The I-130 Petition

The defendants argue further that the decision to deny the Felicia's I-130 Petition for an immediate relative immigrant visa on John's behalf also involves a discretionary determination over which federal judicial review is prohibited by the REAL ID Act. Thus, the defendants argue that review is barred under § 1252(a)(2)(B)(ii), as set forth above, which prohibits review of any discretionary "decision or action" by the Attorney General or Department of Homeland Security. As the Fifth Circuit has construed this statute, § 1252(a)(2)(B)(ii) does not strip courts of the "authority to review any discretionary

9

immigration decision." *Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005). Rather, the Fifth Circuit has interpreted this statute to mean that § 1252(a)(2)(B)(ii) strips judicial review of immigration decisions only where discretionary authority is "specified in the statute." *Zhao*, 404 F.3d at 303. Thus, to determine whether there is jurisdiction to review the administrative decision at issue, the Court must examine "the statute setting forth the nature of the administrative discretion granted." *Jilin Pharm.*, 447 F.3d at 199. Whether a statute in question specifies the necessary discretion for purposes of jurisdiction under § 1252(a)(2)(B)(ii), a reviewing court should examine the statute as a whole. *See id* at 200 (quoting *Soltane v. U.S. Dep't of Justice*, 381 F.3d 143, 146-47 (3rd Cir. 2004)).

According to the statute governing immediate relative visas, any United States Citizen claiming that an alien is entitled to "immediate relative status" under 8 U.S.C. § 1151(b)(2)(A)(i) may file a petition, *i.e.*, an I-130 petition, with the Attorney General for such classification. 8 U.S.C. § 1154(a). Once an I-130 petition is filed, the Attorney General is directed to investigate and, if appropriate, approve or deny the petition:

> After an investigation of the facts in each case, . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in [8 U.S.C. § 1151(b)] . . ., approve the petition and forward one copy thereof to the Department of State.

8 U.S.C. § 1154(b). The plaintiffs insist that the statute governing immediate relative visas is not discretionary because § 1154(b) requires the Attorney General to grant the visa petition ("shall . . . approve") if certain statutory requirements are met.

This argument ignores the fact that the statute plainly conditions the approval of a visa petition on the results of a factual investigation into the truth of the facts supplied in the petition. *See* 8 U.S.C. § 1154(b). Thus, the challenge raised by the plaintiffs does not turn on the decision to deny the visa but, rather, concerns the underlying decision that John failed to qualify as an immediate relative under 8 U.S.C. § 1151(b)(2)(A)(i) because of a sham marriage. The statute governing immediate relative visas contains an express limitation which provides that, if immigration officials determine that a marriage was not entered into in good faith, but was instead a sham marriage entered into for the purpose of evading immigration laws, then the visa petition must be denied:

> Notwithstanding the provisions of subsection (b) of this section no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c). This language reflects that the granting or denying of an I-130 petition on the basis of immediate relative status is not discretionary, as long as the facts alleged in the petition are "true" and as long as the petition is not based on a sham marriage entered into for the purpose of evading immigration laws.

The defendants concede that, while the ultimate decision to grant or deny an immediate relative visa under § 1154(b) may not be discretionary if the applicant is eligible, the predicate determination that an applicant has entered into a sham marriage – thereby

11

making him ineligible for an immediate relative visa under § 1154(c) – is discretionary. The defendants' argument is well taken. Although the statute does not specifically state that the defendants have discretion to decide whether a marriage is bona fide or is, instead, a sham for the purpose of evading immigration laws, the enquiry unquestionably entails a fact intensive process that contemplates the exercise of discretion. *See Eastern Carpet House, Inc. v. Department of Homeland Security*, 430 F. Supp. 2d 672, 675 (S.D. Tex. 2006) (noting that the Fifth Circuit in *Zhao* does not require "the magic word 'discretion' to appear for the jurisdiction stripping statute to apply").

In the immigration context, a marriage is considered a sham if the bride and groom did not intend to establish a life together at the time they married. *See Syed v. Ashcroft*, 389 F.3d 248, 252 (1st Cir. 2004) (citing *Bark v. INS*, 511 F.2d 1200, 1201 (9th Cir. 1975)). Factors like post-marital separation are relevant, but not dispositive of intent. *See Bark*, 511 F.2d at 1202. "Of course, the time and extent of separation, combined with other facts and circumstances, can and have adequately supported the conclusion that a marriage was not bona fide." *Id.* As outlined in the above-referenced Notice of Intent to Deny and the Notice of Denial, immigration officials clearly weighed a variety of factors and evidence during the process of determining that the marriage between John and Felicia was suspect. (Doc. #11, Ex. 1 & 2). Based on this investigation, the District Director, in his discretion, decided that the marriage was not bona fide and that a visa was precluded by § 1154(c).

Although no circuit court of appeals has addressed this precise issue, there has been at least one district court case decided since the passage of the REAL ID Act which

recognizes that, while there may be no choice but to deny an I-130 petition once it has been determined that the immigrant entered into a sham marriage, the underlying decision whether or not a sham marriage has occurred in the first instance is a discretionary one over which there is no federal court jurisdiction to review. *See Ginters v. Cangemi*, 419 F. Supp. 2d 1124, 1130 (D. Minn. 2006). In that case, the district court concluded that jurisdiction was lacking over the precise question that the plaintiffs in this case request review, namely, whether an I-130 petition was properly denied based on a sham marriage, because the finding of a fraudulent marriage has historically involved an exercise of discretion necessarily conferred upon immigration officials by 8 U.S.C. § 1154(c). *See Ginters*, 419 F. Supp. 2d at 1130 (citing *Asare v. Ferro*, 999 F.Supp. 657, 659-60 (D. Md. 1998) (stating that decision whether immigrant qualifies as immediate relative of petitioner "would necessarily involve an investigation into the validity of the [immigrant's] marriage under state and immigration law"); *Horta-Ruiz v. United States Dep't of Justice, INS,* 635 F.Supp. 1039, 1040 (S.D.N.Y. 1986) ("Granting preferential status to visa petitions is within the broad discretion of the INS . . . .")); *see also Etbeleh v. Chertoff*, 2006 WL 2331052 (S.D. Tex. Aug. 8, 2006) (finding that there was no jurisdiction under the REAL ID Act amendments to review the revocation of an immigrant visa where there was evidence of marriage fraud).

Because the determination of whether the plaintiffs had entered into a sham marriage for purposes of 8 U.S.C. § 1154(c) was a discretionary decision, the Court concludes that this determination falls within the scope of the jurisdiction-stripping provision found at 8 U.S.C. § 1252(a)(2)(B)(ii). Thus, the REAL ID Act precludes jurisdiction to review the denial of

13

an immediate relative visa in this instance.[4] *See Ginters*, 419 F. Supp. 2d at 1130. The defendants' motion to dismiss for lack of jurisdiction is therefore granted.

## IV. PLAINTIFFS' MOTIONS

The plaintiffs have filed several motions in response to the defendants' motion to dismiss. There is a motion for leave to file a response in excess of the page limitation and a motion to file that response (Doc. # 16) under seal. Both of these motions (Doc. #20 & #21) are granted.

The plaintiffs have also filed a motion to amend the complaint to include claims for violations of the Freedom of Information Act ("FOIA") and the International Covenant on

---

[4] The plaintiffs attempt to allege that the decision to deny an immediate relative visa was entered in violation of the constitution. None of their allegations have any merit, as the record demonstrates that immigration officials followed the correct standards in determining that the plaintiffs failed to produce sufficient evidence that their marriage was bona fide. (Doc. #11, Ex. 1, *Notice of Intent to Deny*, Ex. 2, *Notice of Denial*). Even if there was jurisdiction to review the denial of the I-130 visa petition at issue, the evidence presented by the plaintiffs is not so compelling that no reasonable fact finder could fail to find a bona fide marriage. *See Syed*, 389 F.3d at 251. The affidavits provided by the plaintiffs are vague and not terribly persuasive. The plaintiffs concede that they were not cohabitating because of "career and employment choices" in which Felicia elected to reside in Beaumont to manage a Luther's Bar-B-Q restaurant while John decided to pursue a legal career in New York. Lack of cohabitation was plainly not the only factor considered here. The plaintiffs did present additional evidence. (Doc. #16, Ex. 4, 6, 12). As the District Director noted, however, there was scant evidence that the two communicated or visited each other during the extensive time they lived apart and much of the proof that was presented post-dated the interview. (Doc. #11, Ex. 2, *Notice of Denial*). For example, the plaintiffs managed to present only one cell phone bill dated August 8, 2001, after the interview with immigration officials, documenting communication between the couple. (Doc. #16, Ex. 12). The plaintiffs fail to show that the sparse quantity of evidence submitted was sufficient to demonstrate that the two intended to establish a life together under the governing standard. *See, e.g., Bark*, 511 F.2d at 1201. Because the decision made by immigration officials in this instance is supported by reasonable, substantial, and probative evidence on the record considered as a whole, the decision must be upheld. *See Syed*, 389 F.3d at 251 citing (*INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

14

Civil and Political Rights (the "ICCPR"), adopted December 16, 1966, entered into force March 23, 1976, 999 U.N.T.S. 171 (1966). The defendants note that any claim by the plaintiffs under the FOIA is now moot because, on August 29, 2006, a complete copy of John Ayanbadejo's administrative file was provided to his attorney. To the extent that the plaintiffs wish to present a claim under the ICCPR, there is no cognizable cause of action under this treaty. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004) (recognizing that the United States ratified the ICCPR with the express understanding that its substantive provisions were not self-executing and did not create obligations enforceable in the federal courts). The motion for leave to amend (Doc. #23) is denied.

The plaintiffs have also filed a motion under Rule 201 of the Federal Rules of Evidence, asking this Court to take "judicial notice of all adjudicative facts and supporting evidence" submitted in response to the defendants' motion to dismiss. Rule 201 of the Federal Rules of Evidence provides that a court may take judicial notice of an "adjudicative fact" if the fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." FED. R. EVID. 201(b). The facts to which the plaintiffs refer are reasonably capable of dispute. Thus, the facts asserted are not capable of judicial notice under Rule 201. The plaintiffs' motion for judicial notice (Doc. #18) is denied.

## IV.   <u>CONCLUSION AND ORDER</u>

Based on the foregoing, the Court **ORDERS** as follows:

15

1. The defendants' motion to dismiss (Doc. # 11) is **GRANTED**.

2. The plaintiffs' motion to seal (Doc. #20) and motion for leave to exceed the page limit (Doc. # 21) are **GRANTED** with respect to the plaintiffs' response to the defendants' motion to dismiss (Doc. # 16).

3. The plaintiffs' pending motion to amend the complaint (Doc. # 23) and their motion for judicial notice of adjudicative facts (Doc. # 18) are **DENIED**.

4. This case is **DISMISSED** for lack of jurisdiction.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas on **September 21, 2006.**

_____
Nancy F. Atlas
United States District Judge