IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN AYANBADEJO, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-1177 |
| | § | |
| JANET NAPOLITANO, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

The plaintiffs, John Ayanbadejo and Felicia Malveaux Ayanbadejo, filed this action

for declaratory relief against Janet Napolitano in her official capacity as Secretary of the

United States Department of Homeland Security and Acting District Director Ray Adams of

the United States Citizenship and Immigration Services ("USCIS").[1]   This case was

remanded by the Fifth Circuit for further review of an adverse decision by USCIS on an

immigrant visa petition to classify Mr. Ayanbadejo as the spouse of a United States citizen.

*See Ayanbadejo v. Chertoff*, 517 F.3d 273, 277-78 (5th Cir. 2008).   The defendants have

provided the administrative record under seal and they have filed a motion for summary

judgment.   (Docs. # 52, # 58).   The plaintiffs have filed a response.   (Doc. # 62).   After

considering all of the pleadings, and the applicable law, the Court grants the defendants'

motion and dismisses this case for reasons that follow.

---

[1]   Originally, the plaintiffs filed suit against Michael Chertoff, as Secretary of the Department of Homeland Security, and Sharon Hudson, as District Director of the United States Citizenship and Immigration Services.  Chertoff has been replaced by Janet Napolitano and Hudson has been replaced by Ray Adams.  Because the plaintiffs sue these defendants in their official capacities, the Court substitutes Napolitano and Adams as the proper parties pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

# I.   __BACKGROUND__

The background and procedural history of this case has been set forth previously in the Court's *Memorandum and Order* dated September 21, 2006 [Doc. # 25] and will not be repeated at length here.  It is sufficient to note that the plaintiffs seek declaratory relief from an adverse decision on an immigrant visa petition that was filed by Felicia Malveaux Ayanbadejo ("Felicia" or "Felicia Malveaux") on behalf of her spouse, John Ayanbadejo ("John").  The administrative record compiled in connection with the plaintiffs' visa petition is summarized briefly below.  [Doc. # 52].[2]

John is a native and citizen of Nigeria.  He arrived in the United States with a temporary, non-immigrant visa on December 18, 1996, to visit siblings in Houston, Texas.  During his visit to Houston, John met Felicia Malveaux.  At that time, Felicia resided in Beaumont, Texas, where she worked as a restaurant manager.  The record reflects that John's temporary visa was set to expire on March 5, 1997.  [AR at 154].  Shortly before that time, on February 10, 1997, John and Felicia were married by a justice of the peace in Harris County.  [AR at 446].

As a United States citizen, Felicia promptly filed a Form I-130 "Petition for Alien Relative" (an "I-130 Petition") on March 3, 1997, to obtain an immigrant visa for John as her spouse or "immediate relative."[3]  John and Felicia were interviewed separately by an

---

[2]      Hereafter, all references to the Administrative Record [Doc. # 52] will be cited as "AR."

[3]      *See* 8 U.S.C. § 1154(a)(1)(A)(i) (providing that "any citizen of the United States claiming that an alien is entitled to . . . an immediate relative status . . . may file a petition with the (continued...)

adjudications officer on December 16, 1999.  Thereafter, the adjudications officer requested additional proof that the couple had been co-habitating since the marriage. [AR at 362]. Investigation revealed that John and Felicia were living at separate residences in Houston and Beaumont, respectively.

In October of 2000, John moved to New York while Felicia remained in Beaumont. The District Director issued a notice of intent to deny the I-130 Petition on December 5, 2000.[4] [AR at 229].  In that notice, the Director concluded that John and Felicia did not have a bona fide marriage and that John was not eligible for the immediate relative visa because it appeared that he had entered into a "fraudulent marriage" for the purpose of obtaining an immigration benefit.  [*Id.*].  Thereafter, on April 17, 2001, Felicia filed a second I-130 Petition for an immediate-relative visa on John's behalf.  John and Felicia had a second interview with an adjudications officer on January 8, 2002.  After considering affidavits from John and Felicia, as well as additional documentation, the USCIS issued a notice of intent to deny Felicia's second I-130 Petition. In that notice, which is dated June 26, 2002, the Acting District Director found that there was insufficient proof that the marriage was valid for purposes of establishing eligibility for the immediate relative visa:

> Service records reveal [that] you and your [husband] appeared for an interview
> on January 08, 2002.  At that time you stated that on December 16, 1999 you

---

[3]     (...continued)
Attorney General for such classification"); 8 U.S.C. § 1151(b)(2)(A)(i) (defining "immediate relative" to include a United States citizen's spouse).

[4]     The Court takes judicial notice that Beaumont is located 88 miles from Houston.  *See* RAND MCNALLY, ROAD ATLAS:  UNITED STATES, CANADA, & MEXICO 98 (2001 ed.).

appeared for an interview regarding your initial filing. At that interview you were requested to submit additional documentation in order to establish eligibility for the benefit sought.  The Service received your documentation and determined that it was insufficient.  On December 5, 2000 the Service issued a notice of intent to deny the visa petition.  Although you submitted additional documentation in response to that notice, on April 17, 2001, you filed another Form I-130.  At your second interview you acknowledged that you have been living in Beaumont, Texas but your spouse [John] has been living in New Jersey since October 2001.  He previously resided in New York City from October 2000 until October 2001.  During that time, you remained in Beaumont.  You have not visited your husband in New York or New Jersey.  Your spouse stated that he visits Houston and submitted evidence of flights to and from Houston.  No evidence was presented showing who he visited and where he stayed on those visits to Houston.  You have previously stated, in writing, that your spouse has a brother and other family members who live in Houston.  Additional evidence is not supportive of a viable marriage.  For example, the monthly statement from your joint checking account at United Bank showed no activity for the month.  The cancelled checks you submitted were written to you and signed by you.  The evidence submitted fails to establish eligibility for the benefit sought.

[AR at 146].  Based on these findings, the Acting District Director issued his notice of intent to deny the I-130 Petition because he had "reason to believe" that the union was "fraudulent" and entered into solely "for immigration purposes."  [AR at 147].

Felicia filed a response to the June 26, 2002 notice of intent and she reportedly presented additional documentation.[5]  On October 9, 2002, the USCIS found that the

---

[5]     A careful review of the administrative record reflects that much of the documentation presented by John and Felicia duplicated information that had been provided previously. [Doc. # 52].  In that respect, the administrative record contains multiple copies of John's tourist visa, the marriage certificate, Felicia's lease agreement for her apartment in Beaumont, John's employment records, tax returns, bank statements, plane tickets, photographs, and other miscellaneous information.  Because the same documents appear repeatedly throughout the record, it appears that the same documents were submitted more than once.

evidence presented was insufficient to establish that John and Felicia had a bona fide intent

to enter into a valid marital relationship:

> At the time of [the January 8, 2002] interview, you acknowledged that you reside in Beaumont, Texas and that your husband has been living in the New York/New Jersey area since October 2000. You acknowledged that you have never visited your husband in New York, or New Jersey since he moved there almost two years ago. Although your husband has made trips to Houston, you have failed to provide evidence of any contact with your husband during those visits. You stated that your husband's family lives in Houston and that he frequently stayed there (not with you in Beaumont) prior to his move out of state. You provided no evidence of telephonic communication with your spouse, such as long distance telephone bills. Your "letters" to your spouse consisted of one three-sentence note stating that you were forwarding income tax papers to his New York address. That letter was postmarked AFTER the interview. The evidence you have submitted fails to establish eligibility for the benefit sought. You have provided insufficient evidence that a bona fide husband-wife relationship was intended.

[AR at 20 (emphasis in original)].  Therefore, the Acting District Director denied the I-130

Petition based on the finding that the marriage was entered into "for the purposes of

circumventing immigration law."  [AR at 21].  On June 16, 2005, the Board of Immigration

Appeals ("BIA") affirmed the decision without a written opinion.  [AR at 3].

The plaintiffs now seek a judgment declaring that immigration officials wrongfully

denied the I-130 Petition for an immediate relative visa that was filed by Felicia on John's

behalf.[6]  In particular, the plaintiffs argue that immigration officials denied the petition in

---

[6]      Originally, the plaintiffs also requested declaratory, injunctive, and mandamus relief from an adverse decision on a Form I-485 "Application to Register Permanent Residence or Adjust Status" (an "I-485 Application") that John filed on his own behalf to adjust his status from a non-immigrant visitor to a lawful permanent resident under 8 U.S.C. § 1255(a). This Court dismissed those claims previously for lack of subject matter jurisdiction and the Fifth Circuit affirmed that decision. *See Ayanbadejo v. Chertoff*, 517 F.3d 273, 276-77 (5th Cir.
(continued...)

reliance on information that was "rebutted and shown to be demonstrably false" and "mischaracterized evidence" that was "truthfully given" by Felicia.  [Doc. # 1, Complaint, at ¶ 4].  The plaintiffs explain that they were "temporarily living apart" because of ordinary "career choices" and that they "still communicated like other couples similarly situated." [*Id.*].  Therefore, the plaintiffs seek a declaration that the defendants' decision to deny the I-130 Petition was unlawful.

The defendants have filed a motion for summary judgment, arguing that the plaintiffs failed to present the requisite evidence to establish their intent to enter into a bona fide marriage or to show that the administrative decision to deny the I-130 Petition was arbitrary, capricious, or contrary to the law.  [Doc. # 58].  The plaintiffs disagree.  [Doc. # 62].  The parties' contentions are discussed below under the governing standards of review.

## II.    STANDARDS OF REVIEW

### A.    Summary Judgment

The defendants have filed a motion for summary judgment, arguing that the plaintiffs' claims fail as a matter of law.  Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en

---

[6]       (...continued)
          2008).

banc).  In deciding a motion for summary judgment, a reviewing court must determine

whether the "pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322–23.

For summary judgment, the initial burden falls on the movant to identify areas

essential to the non-movant's claim in which there is an "absence of a genuine issue of

material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The

moving party, however, need not negate the elements of the non-movant's case.  *Boudreaux*

*v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its

burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'"

*Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v.*

*Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the

pleadings and designate specific facts showing that there is a genuine issue of material fact

for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal

citation omitted).  The non-movant must do more than simply show that there is some

"metaphysical doubt" as to the material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574,  587 (1986).  "An issue is material if its resolution could affect the

outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party"  *DIRECTV Inc. v. Robson*,

420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

### B.     Review of Administrative Decisions

A reviewing court may only set aside an administrative decision where the plaintiff establishes that the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also City of Dallas, Tex. v. Hall*, 562 F.3d 712, 717 (5th Cir. 2009) (citing *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 375-76 (1989); *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976)).  Review under this standard is "narrow and highly deferential, requiring only that the agency 'articulate a rational relationship between the facts found and the choice made.'"  *City of Abilene v. EPA*, 325 F.3d 657, 664 (5th Cir. 2003) (citations and quotation omitted).  Under this deferential standard, the reviewing court may not substitute its own judgment for that of the agency.  *Id.*

The agency at issue in this case, the USCIS, enjoys broad discretion in deciding whether to grant or deny visa petitions. *See Louisiana Philharmonic Orchestra v. INS*, 44 F. Supp. 2d 800, 802 (W.D. La.1999) (citation omitted).  In considering the evidence in this case, the Court is limited to reviewing the administrative record which went before the Board of Immigration Appeals or BIA. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973); 5 U.S.C. § 706(2)(E).  To uphold the BIA's decision, the defendants must show that the District Director's factual finding that the plaintiffs' marriage was a sham is supported by "substantial evidence" in the record.  *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997).  This "requires only that the BIA's decision be supported by record evidence and be substantially reasonable."  *Omagah v. Ashcroft*, 288 F.3d 254, 258 (5th Cir. 2002) (citing *Mikhael*, 115 F.3d at 302). For the

plaintiffs to prevail, by contrast, they must demonstrate that the evidence they presented to the District Director was so compelling that "no reasonable fact finder" could fail to find that they had a bona fide marriage. *Syed v. Ashcroft*, 389 F.3d 248, 251 (1st Cir. 2004) (citations and internal quotations omitted). The administrative record is reviewed below in connection with the law governing immigrant visas for the spouse or immediate relative of a United States citizen.

## III.   <u>DISCUSSION</u>

As outlined above, the administrative decision at issue concerns the denial of an I-130 Petition to classify John as Felicia's spouse and therefore her immediate relative for the purpose of securing an immigrant visa. According to the statute governing immediate-relative visas, any United States citizen claiming that an alien is entitled to "immediate relative status" under 8 U.S.C. § 1151(b)(2)(A)(i) may file a petition, *i.e.*, an I-130 petition, with the Attorney General for such classification. 8 U.S.C. § 1154(a). Once an I-130 petition is filed, the Attorney General is directed to investigate and, if appropriate, approve the petition "if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made" qualifies as an "immediate relative" as that term is defined by law. 8 U.S.C. § 1154(b).

In this case, the reviewing official concluded that John failed to qualify as an immediate relative under 8 U.S.C. § 1151(b)(2)(A)(i) because the plaintiffs failed to present sufficient proof that their marriage was bona fide. In other words, the official denied the I-

130 Petition based on his conclusion that the plaintiffs' union was a fraudulent or "sham marriage" entered into for purposes of circumventing the immigration laws.

The statute governing immediate relative visas contains an express limitation which provides that, if immigration officials determine that a marriage was not entered into in good faith, but was instead a sham marriage entered into for the purpose of evading immigration laws, then the visa petition must be denied.   8 U.S.C. § 1154(c).[7]   In visa petition proceedings, the petitioner bears the "burden of proof to establish eligibility for the benefit sought."  *Matter of Brantigan*, 11 I. & N. Dec. 493, 493 (BIA 1966).  In particular, where a petitioner seeks an immediate-relative visa for a spouse, the petitioner must prove "by a preponderance of evidence that [the petitioner] and the beneficiary intended to establish a life together at the time of their marriage." *Matter of Pazandeh*, 19 I. & N. Dec. 884, 887 (BIA 1989) (citing *Matter of McKee*, 17 I. & N. Dec. 332 (BIA 1980)); *see also Bark v. INS*, 511 F.2d 1200, 1201 (9th Cir. 1975).  Where the legitimacy of a marriage is called into question,

---

[7]     The statute that prohibits an immediate-relative visa where a fraudulent marriage is shown states as follows:

> Notwithstanding the provisions of subsection (b) of this section no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c).

the petitioner must present documentary or testimonial evidence to show that it was not entered into for the primary purpose of evading the immigration laws. *See Matter of Phillis*, 15 I. & N. Dec. 385, 386 (BIA 1975). In this context, a petitioner is encouraged to present evidence including, but not limited to, "proof that the beneficiary has been listed as the petitioner's spouse on any insurance policies, property leases, income tax forms, or bank accounts; and testimony or other evidence regarding courtship, wedding ceremony, shared residence and experiences." *Id.* at 387; *see also Matter of Laureano*, 19 I. & N. Dec. 1, 1 (BIA 1983) (same). The plaintiffs maintain that they met their burden of proof at the administrative level and that the defendants' decision to deny the I-130 Petition was arbitrary, capricious, and contrary to the law.

Following their interview with an adjudication officer on December 16, 1999, the plaintiffs were asked to provide proof of co-habitation since their February 10, 1997 marriage by supplying evidence of the following: (1) receipts in both names for purchases of wedding rings, furniture, cars or appliances; (2) home or business purchases or rental leases in both names; (3) bank, savings accounts, and credit card statements in both names; (4) insurance for business, cars, health, or life in both names; (5) utilities statements in both names, bills in both names, personal mail at the same address (not bulk mailings); and (6) income tax records showing joint filings. [AR at 362]. The administrative record shows that the plaintiffs' submission fell far short of the level of proof that was requested.

Although there is one receipt for a mattress in John's name, with Felicia's name added as an afterthought, the record contains no joint receipts for any other purchases. [AR at 339].

11

There is no evidence that the plaintiffs purchased or leased a home together at any time.  The record shows that, after their marriage on February 10, 1997, Felicia continued to reside in Beaumont, Texas, where she had been employed as a restaurant manager since 1987.  [AR at 421, 428].  While Felicia continued to maintain her own apartment in Beaumont, John's Texas Driver License confirms that his official residence was in Houston, where he was reportedly employed as a temporary worker, a data entry clerk, or a "credit coordinator." [AR at 420, 453-54].  Although John claims that he lived with Felicia on the weekends, his name was not added to the lease as a co-tenant or resident when Felicia renewed the lease in 1998.  [AR at 402].  There is no evidence showing that John was ever added to Felicia's lease.  Likewise, there are no utility statements or other bills in both John and Felicia's names.  Thus, there is no documentary proof that the two shared a residence following their marriage.

The record also contains little evidence of commingled financial assets following the marriage.  John and Felicia filed separate income tax returns for 1997.  [AR at 410-11, 451-52].  There are no income tax returns in the record for 1998 or 1999.  There are isolated bank statements showing that John and Felicia maintained accounts in both of their names in Houston and in Beaumont but, as immigration officials observed, there is no meaningful activity showing that the accounts were being jointly used.  John and Felicia purchased life insurance policies for each other in 1999.  [AR at 294-95]. The following year, however,

John moved from Texas to New York, where he passed the bar exam,[8] and obtained

employment as a contract attorney for a state agency.  [AR at 233, 381-82].  John and Felicia

filed a joint tax return in 2000.  [AR at 290-95].  John listed Felicia as a beneficiary on his

New York State retirement account in 2001, showing that she continued to reside in

Beaumont while he lived in New York.[9]  [AR at 298-99].

　　　In his affidavit, dated January 24, 2001, John explained that he was working in New

York, but that he would "occasionally" return to Beaumont to spend time with Felicia "on

holidays and vacation days."  [AR at 233].  John provided a few airline receipts, which

purport to document trips to Houston in 2000 and 2001.  [AR at 300-308]. There is no

evidence, however, showing that John traveled to Beaumont or that he spent time with

Felicia during these trips.   Likewise, there is no evidence of written or telephonic

correspondence, showing that John and Felicia communicated on a regular basis during the

extended time that they lived apart.  Based on this record, the District Director found that the

---

[8]　　John has a foreign law degree from an undisclosed university.  In an affidavit dated July 17, 2002, Felicia explained that John was not eligible to take the Texas Bar Exam until he had practiced law fur five years as an attorney in his home country or for three years as an attorney in the United States.  [AR at 24].  Felicia said that John planned to practice in New York for three years before returning to Texas to live with her.  [*Id.*].  John was admitted to the New York Bar in 2000.  It is unclear whether he has taken the Texas Bar Exam or that he has been admitted to practice law here.  It is likewise unclear whether John and Felicia are currently together.  The Court notes that John appeared for the scheduling conference that was held on December 12, 2008, but that Felicia did not.  Likewise, John is the only plaintiff who submitted a signed statement in support of the response to defendants' motion for summary judgment.  [Doc. # 62, Ex. 1].

[9]　　In June of 2001, John obtained employment as a hearing officer with the "New York State Office of Temporary and Disability Assistance, Office of Administrative Hearings."  [AR at 205].

plaintiffs provided "insufficient evidence that a bona fide husband-wife relationship was intended" and denied the I-130 Petition, concluding that the marriage was a sham.  [AR at 20-21].

In the immigration context, a marriage is considered a sham if the bride and groom did not intend to establish a life together at the time they married.  *See Syed v. Ashcroft*, 389 F.3d 248, 252 (1st Cir. 2004) (citing *Bark v. INS*, 511 F.2d 1200, 1201 (9th Cir. 1975)).  The conduct of the parties after marriage is relevant to their intent at the time of marriage.  *Bark*, 511 F.2d at 1202.  Such conduct is relevant "only to the extent that it bears upon [the plaintiffs'] subjective state of mind at the time they were married." *Id*. (citing *Lutwak v. United States*, 344 U.S. 604 (1953)).  Likewise, evidence of post-marital separation is relevant, but not dispositive of intent.  *See Bark*, 511 F.2d at 1202. "Of course, the time and extent of separation, combined with other facts and circumstances, can and have adequately supported the conclusion that a marriage was not bona fide." *Id.*

The record in this case demonstrates that the plaintiffs have maintained separate homes and lives throughout their marriage.  The evidence shows that, for much if not most of the marriage, the plaintiffs have resided and worked in different cities and, in fact, different states.  The fact that the plaintiffs lived separately for most of their marriage, however, was not the only factor relied upon by the District Director when he denied the visa petition.  As the District Director noted, there was little evidence, and none convincing, that the plaintiffs commingled their assets.  Likewise, there was scant evidence that the two communicated or visited each other during the extensive time they lived apart.  Indeed, much

14

of the meager proof ultimately presented post-dated the interview with the adjudication officer and appeared contrived. Therefore, the record contains substantial evidence to support the District Director's finding that the plaintiffs failed to establish a bona fide marriage or to show that John was entitled to the benefit sought. The plaintiffs have failed to demonstrate that the evidence compels a contrary conclusion or that the two plaintiffs intended to establish a life together under the governing standard. *See, e.g., Bark*, 511 F.2d at 1201. It follows that the plaintiffs have also failed to meet their burden to show that John is eligible for an immediate relative visa. *See National Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989) (stating that the plaintiff bears the burden of proving his eligibility for the requested visa).

Based on this sparse record, the plaintiffs have also failed to show that the agency decision at issue was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See* 5 U.S.C. § 706(2)(A). Because the evidence does not compel a conclusion contrary to the District Director's findings, and the agency's decision was neither arbitrary nor capricious, a reversal of the agency's ultimate decision is not warranted

in this case.[10]  *See Elias-Zacarias*, 502 U.S. at 481.  The defendants' motion for summary

judgment will be granted, and the complaint for declaratory relief will be dismissed.

## IV.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.      The defendants' motion for summary judgment [Doc. # 52] is **GRANTED**.

2.      This case is **DISMISSED** with prejudice.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas on September 15th, 2009.

Nancy F. Atlas
United States District Judge

---

[10]     The complaint contains an allegation that the I-130 Petition was denied in violation of the plaintiffs' right to due process because they were not afforded the opportunity to "present evidence, including live witnesses, to cross-examine, the right to subpoena witnesses and documents, [and] the right to inspect the record of proceedings, etc."  [Doc. # 1, at ¶ 5]. These allegations are entirely belied by the record.  The plaintiffs were afforded ample opportunity to present evidence in support of both the initial I-130 Petition and the second I-130 Petition filed by Felicia on John's behalf.  After considering both petitions and the plaintiffs' evidence, immigration officials determined that the plaintiffs failed to produce sufficient evidence to establish that a bona fide marriage.  The plaintiffs fail to establish a due process or other constitutional violation in connection with this decision and the record does not disclose one. Therefore, the Court will not address this allegation further.

16